Good morning. May it please the Court, my name is Gary Soter. I represent the plaintiff and appellant Mitchell Sgro. I'm here today because Mr. Sgro came to my office a couple of years. He didn't understand why his disability claim wasn't paid. I investigated and found out that MetLife engaged in a business practice which is in clear violation of the Code of Federal Regulations, the State California Insurance Code, the California Code of Regulations and its own policy and internal guidelines. Counsel, how much is at stake in this case? As best I can figure from the record, it's either $46 total or maybe at the outside $412. Benefits have been paid. Your client's benefits are all taken care of. The only thing left, as I understand it, if I'm not, and that's when I need your help, is the copying costs. Justice O'Scanlan, you are correct. All that's left is either $60 or $412 is what we alleged in our complaint for Mr. Sgro. However, this was brought, the photocopy expense issue was brought as a class action in which we seek both injunctive relief and restitution to similarly situated disabled people who are required as a condition to making their claim, their administrative claim, or processing an appeal to pay for any and all photocopying costs of medical records demanded by Medline. All right. To the extent we're talking Rule 23, I don't see where you sought leave to file a class certification or filed a class certification. That's because the Court granted defendants' motion to strike the class allegations from the complaint, and we appeal from that order. The Court did so for mysterious reasons. The only explanation given at the hearing was that this belonged in small claims court, in state court, after earlier relegating us to ERISA remedies only. Yeah. Now, let me ask you this. I'll state it and then you can disagree with me if you do. If we hold that your client has failed to state a cause of action on the merits, my understanding is then that the class action stuff just falls away because your client has no cause of action on the merits and therefore no class that he can represent. Is that right? I agree. Yeah. Okay. So preliminary question for me then is, do you have a cause of action here? All right. It seems to me that your state causes of action are preempted under ERISA. The only thing left then is, does the requirement of, for me, is does the requirement of photocopying conflict with ERISA? Well, let me explain why our state claims are not barred by ERISA. Okay. The basis of the Court order was that our allegation in paragraph 8 of the complaint, where we alleged all of the facts necessary to bring this in within the safe harbor, were untrue. The Court essentially concluded that the allegations of our complaint were untrue because the policy itself required the employer, Danone, which is Sparkless Water, to contribute to the disability policy premiums. But what we alleged was that in actual practice, that's not what was occurring, that the plan was entirely paid for by the employee. We asked many times, show us evidence that the employer was contributing, and they never did. The case law, and there's a recent 2007 case that's dispositive on this issue where the exact issue was involved as to whether the safe harbor provisions applied. And the Court in Ames v. Jefferson Pilot, 515 FedSup 2nd, 1050, said the following. Although it is undisputed that the employer agreed to make the deductions from payroll in the amount required to pay the necessary premium coverage in force, and remit the deductions to the insurer on a timely basis in accord with the billing schedule agreed upon, the Court concludes that such an agreement is not by itself determinative of the issue. As this Court noted in Schwartz v. Provident Life, the dispositive question is whether the employer actually absorbed any portion of the cost of those premiums. What we alleged here is that the employer did not absorb any of the costs of the premium, and therefore the safe harbor provisions apply. But weren't there two portions? There was a mandatory portion and an elective portion. Yes. And to the extent we're talking about the mandatory portion, that's irrelevant, is it not? No. All right. And the reason it's not irrelevant is that if the policy was actually or the plan was actually administered in the way it's described in the booklet, then ERISA would apply. We agree. But what we alleged in the complaint, in which was disregarded, is that the plan says one thing, but they administer it in a different way. And I alleged that because that's what the employer, Dunone, told me, and I put that in my declaration, which is at tab 22. And the second reason that ERISA preemption doesn't apply is this. There's a California statute, California insurance code. There's a California code of regulation, which specifically places the burden on the insurer when investigating a disability claim to pay for all the costs of photocopying medical records. That is a statute which regulates insurance. It allocates risk and costs between the disabled claimant on the one hand and the insurance company on the other hand. And it says, as a matter of law, it is the burden on the insurer to pay for the cost of photocopying those records and securing the records necessary to challenge the insurer's proof of loss. That statute is a statute which regulates the business of insurance. And as such, it's saved from ERISA. It doesn't matter one way or the other whether a cause of action was created by the statute. That argument makes some sense, but I have a difficult time coming up with any statute that doesn't that applies to an ERISA plan that wouldn't couldn't be described as allocating the costs and burdens and risks. Give me an example of something that wouldn't fall within that exception.  That's right. As to which you couldn't make the same argument. This strikes me as something that is as far removed from the allocation of risks as you could possibly get. I don't know of something off the top of my head that wouldn't fall within this. It's one of those exceptions that swallows up the rule. There's no rule left. We cited a case that I thought was applicable from Justice Posner in the Plum case that was from the Seventh Circuit. And in that case, it involved an Illinois statute which required certain coverage for preexisting conditions. And the court held that this was a statute which regulated the insurance and that it was saved from preemption by ERISA. I know. We can come up with lots of examples like that. What I'd like you to do is come up with an example of something that doesn't. Almost anything that regulates an ERISA plan will have, or pretty much everything, will have an effect on the allocation of risks and costs and burdens. Well, I don't know of an answer to your question of a statute that wouldn't be saved. But assuming that we accept their argument that this is not saved from ERISA, then wouldn't the logical consequence be that MetLife could ignore the statutory regulations in the State of California requiring that the insurance company must bear those burdens? No, that's what preemptive means. Preemptive means it is superseded by federal law, and it is therefore a nullity. Well, if we... This is how preemption works. However, in this case, federal law is completely consistent with and supportive of State law because federal law, as enunciated by the Department of Labor in the Code of Federal Regulations, specifically provides that an insurer handling a disability claim or a plan may not, as a matter of law, require any or administer a claim in any way to require a disabled claimant to pay any cost or incur any expense as a condition of making a claim or processing an administrative appeal. It doesn't say quite that. It says that they can't be charged for it, basically. So MetLife can't say, okay, we'll process your claim if you pay us $100. That's true. That's certainly the case. It doesn't say, you know, you don't have to incur any expenses in getting... But that's what they're doing. The process is this. A disabled person goes to his doctor, at his expense, obtains a medical review. At his expense, the doctor fills out a form called an attending physician statement, submits it to MetLife, and says, I've examined this patient. He is totally and permanently disabled from working. MetLife then says, okay, give me copies of all of your medical records for the last five years. Identify who all those doctors are. And then sends a bill to the insured, the claimant, and says, we're not going to process this claim further. We're going to deem your claim withdrawn unless you pay for all of the costs of securing those records. Isn't that exactly what 2560.503 was designed to do? He certainly can just provide the records. He doesn't have to pay the bill. He says, I'm going to pay the bill. What I'm going to do is I'm going to give you these records myself. He could do so. However, if he was asked to do so at his expense, that would still be a violation. Of what? Certainly of the California Insurance Code. I understand, but we're not talking about the VISA, the regulation, the federal regulation. The plan itself says, puts the following burden on the claimant. You are required to sign authorizations for release of medical records for us to go out and obtain them. That's what the document says. The plan. What they're doing in practice is you sign the authorization. They don't go out and get them. They get a bill, and they send the bill to the claimant. But the plan does not say that we will get them for free. The plan actually does say that all documents relevant to the claim will be provided to the claimant free of charge, and that's required by the Code of Federal Regulations. All documents relevant to the claim. That means the entire administrative claim. That means all the medical records that were considered, relied or referred to in the processing of the claim. Free of charge. Now, it would render that fairly meaningless if the disabled claimant would have to pay for those same records in the first instance and then get them free of charge. He winds up paying for them. Okay. Your time. We'll hear from the other side. Good morning. Gail Cohen IV, Respondent, Metropolitan Life Insurance Company. Let me first address the ERISA plan issue, because I think to a great extent. Is MetLife really charging for these? No. And we have the advantage in this case of something, a more developed record, both on two bases. One, there was an appeal, and so there's an administrative record relative to that. So you say they're not charged? They're not charged? No, no, no. So they actually process the claim here without sending a bill to Mr. Cohen? Absolutely. What happened in this case? Wait a minute. Is this going outside the complaint? I mean, we have a complaint, right? We've got a 12B6. Did this go in summary judgment? Yes, Your Honor. Are you saying the complaint is not telling the truth when it says that you charged him the copy and cost as a condition of processing the claim? Well, the complaint, actually the allegations of the complaint are a bit ambiguous. And what they do is go through a very detailed chronology of various communications back and forth with MetLife about the handling of the claim and what happened during the course of the handling of the claim. Mrs. Rowe appealed this particular issue dealing with the copy and charge fee in the record, and so that's referenced in this complaint. Right. So by reference we brought in, you know, the response to that appeal. MetLife conducted an investigation on this claims charge. What happened was this. They said there was a request, and again, this is undisputed. MetLife said, get us medical records for a portion of the past year for the past eight months. Mr. Scrowe, through his attorney, went out and ordered medical records. A bill came in. And again, this wasn't MetLife's bill. A bill from whom came in to whom? A bill came in from the medical, from the doctor's office or the doctor's office retained copy service for the charges. And MetLife said, essentially, we're not paying for this bill. I mean, this is not something we didn't contract with this doctor in any way, shape or form. This was not a bill that this was not MetLife's copy service. This was a situation where MetLife simply had requested that the insurer provide medical records, and the doctor's copy service took it upon itself to send a bill to MetLife. I thought MetLife was supposed to obtain the records itself. Under the terms of this plan, MetLife, well, you know, and I can just quote directly from it, that the plan expressly provides that in order to receive benefits, a claimant must provide at his or her expense documentary proof of disability. So they simply asked for a limited amount of medical records to support this claim. This is a relatively incidental expense to providing proof of loss for this claim. And without getting into whether or not ERISA applies, I think this argument that ERISA didn't apply to this plan is a sham argument given the ---- We're talking about ERISA and we're talking about what happened. Let's stick with that for now. Okay. So I'm looking at this regulation that says, for example, a provision or practice that requires payment of a fee or cost as a conditioner to making a claim or to appealing an adverse benefit would be blah, blah, blah. I mean, that's what I'm focused on. Right. And I'm trying to figure out what the complaint says and what's properly before us as the facts that we're supposed to assume. I believe what is probably properly before the court is not only the allegations of this complaint, but the documents that are referenced in that complaint which relate to the administrative record. And that is before the court. Right. And what do those documents show? Some of those documents show that you got these documents and then you said, but we're not going to process the claim until you pay for the copying costs. No. No, Your Honor. Basically, we got the ---- we didn't get any medical records from the insured which delay the processing of this claim. Right. And that's what happened. What is it that you did get that came along with a bill from the copying service? What was that? It was just a bill from the copying service that from the doctor's copying service. What happened is ---- In other words, the underlying documents never got to you? No. No. And, in fact, as I look back at this file in preparation for the hearing today, I strongly believe this is largely a lawyer-manufactured case because the medical records were ordered in August of 2004. In July 2004, again, this is in the allegations of the complaint, MetLife said, you know, we've got a very thin description of your condition, just a diagnosis, get us some medical backup. Records were ordered in August 2004. Records were ordered by whom? By, actually, I believe by Mr. Sotomayor, Mr. Sgro's attorney. Okay. And then what happened? The next thing that happened is we didn't ---- we sent a letter saying we still need the records. And they didn't come. But the bill came. A bill came from a copying center. Okay. Now, you eventually paid this claim. What did you pay it on? Ultimately, I gather Mr. Sgro, through his counsel, submitted the medical records. And that was it. And we paid ---- I think we agreed to pay within less than 30 days. Now, the California statute would require you to pay that bill. Under the California statute, it appears on the face of the statute that, you know, it's not 100% clear to me that that is a statute that's primarily designed to set the maximum amount that has to be paid to a provider in reimbursement for copying charges. That said, it could be construed ---- I'll submit it could be construed to say that they should pay for the copying charges. A ---- They? Who's they now? In other words, that the insurer requesting records. Should pay. You're giving me they's or speaking in a passive voice, and I keep losing who you're talking about. I'm sorry. I should say insurers requesting records from a provider. And in this case, the record shows that after the administrative appeal, MetLife did pay for records, which it directly requested from one of the doctors. It agreed to pay for those charges. The bill ---- But the statute is not limited to the things it requests. Not on the face of the statute. Well, I'm sorry. When you say not on the face of the statute, is that any more than a yes? I mean, where do we look? Well, I ---- Well, there's no case authority or no legislative history that really gives a lot of background to the statute. On the face of it, certainly an argument can be made that ---- And MetLife just decides to ignore it, does business in California? No, I ---- And just decides we don't really feel like doing this? Well, I think under the terms of this plan ---- under the terms of this particular plan, asking for a nominal amount of medical records, they didn't view it as ---- I mean, again, governed by ERISA. This was a statute which I don't believe, A, there's a private right of action in any way, shape, or form under this California statute. I believe the 17200 action brought by Mrs. Stroh is preempted by ERISA. Arguably, the statute conflicts with the express terms of the plan in this particular case. Counselor, I'm still kind of confused about the facts of what happened here. On the one hand, you said you got no records but a copying bill. On the other hand, you said later you got the records, and perhaps as part of this review process, there were additional records requested by MetLife, which MetLife did pay for. Is that correct? No. No, what happened was initially MetLife asked for a certain period of records, eight months' worth of medical history records. They didn't come. We got a ---- MetLife received a copying bill. That's all that occurred. All right. About seven months later, after a lot of back and forth with Mrs. Stroh's counsel, the records were provided by Mrs. Stroh. Okay. But you did say a little earlier, if I heard you correctly, that there were some additional records that were requested by MetLife that the copying charges of which were paid for. Did I misunderstand your statement? Not entirely. What happened was there was only one similar request for records. Some were requested by Mr. Stroh directly of his doctors. MetLife itself made a call and used an authorization form to get some records it wanted. When Mrs. Stroh filed an administrative appeal challenging the copying charges, MetLife reviewed the whole history of the copying charge and said, look, we specifically requested these records of the provider. We'll pay for those as an accommodation. However, under the terms of our plan, we're not required to pay. But you did pay in this case. With respect to that element of the records that it requested directly from MetLife. Now, let me make sure I understood what you just said. And partly I need to go back, because I think I'm getting some fading into what you're telling me is true that may or may not be something I can look at consistent with the complaint. But what I think you just told me was that MetLife, quote, as an accommodation, close quote, decided to pay the copying costs for records that it, MetLife, had itself ordered. Did you just say that? That's correct. Now, as an accommodation suggests to me that you think you were not obliged to do so and that left to your own devices if there had not been a lawyer on the other side, you would have charged the insured. Is that correct? I can't honestly say that, because the company did charge me. Then why did you say as an accommodation? That's the claims department took that position. But you see, as an accommodation is the code word for saying we're waiving our ordinary practice. Just as — I mean, I think, frankly, the issue is really the standard on the arrestors in administering the claim, is MetLife imposing some undue burden and hampering the processing of the claim by asking? Are you claiming that it is consistent with the regulation for MetLife to order records for its processing from a doctor, get the records, and then charge to the claimant the copying charges for those? Well, it's not something that's occurred. So I can't honestly say. Well, it sounds as though it would have occurred if it had not been for, quote, MetLife's, quote, accommodation. I believe — well, again, that's not in the record. But I would say at this point I don't know that that is what occurred here. If a company conducts its own investigation and it is going out and talking to people or hiring an investigator to check up on an insurer, this is something they pay for. But when they simply ask an insurer, provide us with some medical records to support your claim, I believe under the guiding ERISA provisions, the governing regulations about claims processes, this is not an undue burden or hindrance. I can envision in some sense. But if the state statute, this is 10.123.131, is the insurance code, if that is not preempted by ERISA, okay, just accept that thought for a minute, then it is automatically incorporated in the plan. As a benefit? I don't know that it is automatically. Every insurance code provision automatically incorporated into the plan. It may be — You don't know that? Well, I — I'm sorry. I have to — No, no, no. I'm not suggesting that MetLife doesn't have to comply with California law at all. I'm suggesting that — No, listen to me. Listen to me. Don't go off on something else. Just listen. You dispute that insurance code provisions that are not preempted are automatically incorporated into the benefit plan? Is that something you're really going to dispute here? Maybe I'm just — Yes, I know. Are you disputing that under California law, insurance code provisions that are not preempted get incorporated into the insurance plan? This is true of every insurance contract in California. Is there any doubt on this proposition? My only doubt is this. When you're talking about a regulatory provision, I understand your point. Certainly anything dealing with terms and conditions of coverage and mandatory provisions in contracts, those are absolutely — Well, this is pretty mandatory. It says you will not charge anything that the insurance company needs by way of — it says payment by insurer for duplication of information records reasonably necessary to determine liability. So what it says is — the statute is quite clear. It says if the insurance company needs records, needs to have records duplicated for purposes of determining liability, it may not charge an insurer. It has to come up with — is there anything ambiguous about that? I don't disagree that that is a requirement imposed on insurers. I guess what — Okay. Stop. Stop. Okay. Being that a requirement, is it not automatically incorporated into the plan by state law? I suppose for all intents and purposes, it might as well be if they have to comply with it. I'm just saying from a technical standpoint, I don't know — Look, I don't want to know philosophy. I'm asking a specific question. The answer is yes, no, I don't know. You can take your pick of those three. If the answer is I don't know, then that will be fine. We'll just have to go figure it out ourselves. The question is a specific requirement of the insurance code, does that not automatically get incorporated into every insurance plan under California law? Yes, no, I don't know. Those are the three choices. I don't hear anything else out of your mouth. I'll say I don't know, only because I think it's — Assume that it does. Okay. It's a fair assumption. Okay. Then this code provision, assuming it's not preempted, becomes part of the ERISA plan, right? It's tautological. There's no way around that. Okay. And given it's an ERISA plan by operation of law, why doesn't it then become enforceable under ERISA? If it's not preempted — If it's not preempted. If there's a private right of action to pursue relief for this, what I would submit is a regulatory provision. You don't need a private right of action. It's in the plan. So this then becomes, as if it were a piece of the plan, as if it were written into the plan itself, you have a right to have the insurer pay for the duplicating cost. Why doesn't that then become something that's enforceable under ERISA? Well, if your assumption is that it is part and parcel of the plan, then I — I think if you go home and you check this out, you will find that that is a pretty universal rule in insurance law in California, and I think just about everywhere else, that when the law provides certain requirements applicable to insurance, they automatically get folded into the insurance — But to me, the analogy — Into the policy. With all due respect, I think the analogy is like saying there are numerous provisions in the insurance code which govern how insurance companies conduct themselves, fair claims practices and all of that. That doesn't necessarily mean that someone has — those govern how an insurance company operates and maybe even processes claims. That doesn't become — necessarily give rise to some private right of action because it is — So why not? Excuse me? Why not? Because under California law — But under ERISA, they become part of the plan, and being under the plan, you then have ERISA as a way to get into federal court and have them enforced. It's very simple. They get picked up by the plan or the state law, and then ERISA takes over and gives you a cause of action. If, in fact, you know, ultimately under the terms of this, I suppose for purposes of injunctive relief or the equitable relief under ERISA, I suppose that's true. I mean, if, in fact, a regulatory provision like that, again, becomes actionable by an individual pursuing this type of claim, I won't dispute that. I think the underlying assumption, though — Would you like a chance to file a supplemental brief on that? If, Your Honor, I think that would be useful because — I'm asking you. I've asked you a question as to which you said you don't know the answer, so would you like a chance to go home and research it and file something? Yes, Your Honor, I would. Okay. You've got seven days. Counsel, is MetLife the plan administrator in this case? It is not the designated plan administrator. It's not the administrator. No, it's not. So any of these liabilities wouldn't apply or would apply because of that distinction? Well, in terms of — I think that's — well, I — It's a plan fiduciary. When you say any of these liabilities — It's a plan fiduciary, though, isn't it? Excuse me? It is a plan fiduciary. It is the claims fiduciary. It is a plan fiduciary. Well, to the extent that it is functioning as the claims administrator in that capacity, it is a claims fiduciary. It is a fiduciary acting, you know, in that limited functional role. It's been delegated the authority to administer claims by the designated plan administrator, which is Danone Waters, the employer. I understood that the plan administrator within the meaning of the plan or of ERISA is the company, the employer, Danone, is it? Yes, Danone. Not the insurance company. That's correct. So what is the insurance company status relative to the plan? It is considered, I believe, under, you know, a fairly long line of Ninth Circuit cases, starting with Moran. And most recently, I think there was a January 2007 opinion from the circuit involving Metropolitan Life. Consistent with Moran? Excuse me? Consistent with Moran. Consistent with Moran. That was shorter versus Metropolitan Life. Does that mean, then, if MetLife is not the plan administrator, then MetLife is, in effect, immune from any of these collateral claims? It is immune from a claim for penalties. There's a penalties claim. I believe it is immune from that penalties claim. That is the subject of the opinion. But it's not immune from suit because it's a plan fiduciary. That's correct. I mean, it can be sued under ESSA for being a plan fiduciary. There's no doubt about that. Yeah. Are you representing Danone, by the way? Is anybody? Excuse me? Is anybody representing Danone here? We are representing Danone for purposes of this case. Okay. So they clearly are the plan administrator. Yes, they are. Okay. Okay. Anything further? Well, I don't know. Did you have any time left? You have minus two minutes. We have minus two minutes. But we'll give you a minute for a bottle, if you wish. Thank you. I appreciate it. As to what happened, the Court need not look any further than tab 22, page 78. That's a letter from MetLife to the copy service for the doctors on the records they ordered. And they wrote to the copy service, it is Mr. Skrow's responsibility to pay for and provide us with any and all medical information records. MetLife will not pay this invoice, and we're forwarding it to Mr. Skrow for payment. And my declaration, which is at tab 22, discloses that I spoke to MetLife, and they said they always follow that practice, and they always require their claimants to pay for the cost of copy medical records that they order. As far as the plan administrator is concerned, yes, the plan says that Danone is the administrator. But Danone does nothing in connection with the claim at all other than verify the employment of the claimant and the wages when it's determined that amounts are owed. Everything in connection with the claim, the processing of the claim, the evaluation of the claim, the determination of coverage is made by MetLife. And it's MetLife. And these regulations which require the plan fiduciary to disclose all documents relevant to the claim would be meaningless, wouldn't they? MetLife is clearly the plan administrator. There's no doubt about that. The question is about penalties. Because if we could only get penalties against Danone, Danone doesn't have any of the documents that are relevant to the claim other than perhaps the plan. It's MetLife that controls everything. So if we're going to say that there's an immunity for the insurer that's handling every aspect of the claim, the penalties are of no value at all. So that's why I think Danone ought to be followed, to put some teeth in the penalty provisions. Because otherwise, claims are cut. But the only issue as between Danone and MetLife has to do with a daily penalty, right? With a penalty. Nothing else. Yes. The complaint did allege that both Danone and MetLife failed to provide the relevant plan documents required by the Code of Federal Regulations. And nevertheless, Judge Reel struck all requests for penalties against both defendants. And those penalties are running even today, as far as you're concerned. Well, they certainly are with respect to one thing that wasn't made part of the administrative record, and I think this is really crucial. According to the first attorney who called me at MetLife, they said, I don't understand your complaint, Mr. Soter. You allege that we require the insurer to pay for the photocopying of medical records. I'll read to you from our internal guidelines, which say that we, MetLife, incur that expense. I said, fine, send it to me. The next thing I hear, they send it out to a lawyer. And it's those internal guidelines that they are refusing to disclose. Eventually, we got everything else that we needed. And I would ask the Court to look at a case called Palmiati, where another court mentioned that MetLife has this pattern in practice of withholding these internal guidelines, which are not private, they're not confidential, they're required to be maintained by the Code of Federal Regulations. Counsel, do you want to say anything about Moran, the Moran case, which counsel or your opposing counsel mentioned? I think we adequately addressed that in our briefs. I think the difference is I believe Moran was a decision before the Code of Federal Regulations were amended. Well, the holding, Moran, is that the employer is the plant administrator, not the insurance company. The penalties are available, according to the statute, against an administrator. Whether it's a claims administrator or a plant administrator doesn't seem to me to make a difference. And if it's a de facto administrator, that's what should matter. Does Moran make a difference? I don't know. All right. Thank you, counsel. Thank you. Thank you.
judges: Kozinski, O'scannlain, Fletcher